# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| JASON ERIC SONNTAG, | 3:07-CV-00311-RCJ (RAM) |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| DENNIS BALAAM, *et al.*, | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Defendants' Motion for Summary Judgment. (Doc. # 112.)[1] Plaintiff has opposed (Doc. # 120 and Doc. # 122 (Pl.'s Supp. Opp.)) and Defendants replied (Doc. #121). After a thorough review, the court recommends that the motion be denied.

## I. BACKGROUND

Plaintiff Jason Eric Sonntag (Plaintiff) is currently in the custody of the Nevada Department of Corrections (NDOC); however the allegations set forth in Plaintiff's complaint pertain to events taking place when he was a pretrial detainee at the Washoe County Jail. (Pl.'s Third Am. Compl. (Doc. # 86) 1, Defs.' Mot. for Summ. J. (Doc. # 112) 2.) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983.

---

[1] Refers to the court's docket number.

Plaintiff's only remaining claim is set forth in Count III of his Third Amended Complaint. (*See* Doc. # 55, Doc. # 61, Doc. #71, Doc. # 83, and Doc. # 86.) Plaintiff contends that an October 12, 2006 raid on his cell by jail officials constituted cruel and unusual punishment to a pretrial detainee in violation of the Eighth and Fourteenth Amendments. (Doc. # 86 2.) Specifically, Plaintiff alleges that a twelve-man team came into his housing unit and took all inmates in his unit hostage for a three-hour period during which the prisoners were handcuffed behind their backs. (*Id.*) Plaintiff alleges that with a stun gun directly aimed at his body and jail officials yelling at him for compliance, he was forced to march backwards into the solitary confinement section of the jail house without cause. (*Id.*) Plaintiff further alleges that he was strip searched, forced to display his genitalia, and left naked in his cell for one day. (*Id.*) Plaintiff notes that he is handicapped, suffers from bipolar disorder, and is diabetic. (*Id.*)

## II.  LEGAL STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

1       In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.*

      In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.' In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

      If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

3

*Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(citation omitted). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249-50, 255 (citations omitted).

### III. DISCUSSION

**A.  PARTIES**

The motion for summary judgment was filed on behalf of Defendants Balaam, Sheldon, and Obos. (Doc. # 112. 3.) Defendants are correct that there is no executed proof of service on file with respect to Defendants Baker and Porter, and they should be dismissed. (*See* Doc. # 36.)

Plaintiff's Third Amended Complaint also names several other defendants that were previously dismissed. The Washoe County Board of Supervisors and Judge Steinheimer were dismissed with prejudice. (Doc. # 61.) In addition, Count 1, naming Defendants Barnes, Schuler (sic), and an unidentified law librarian, was dismissed with prejudice. (Doc. # 61.) The only remaining defendants are Balaam, Sheldon, and Obos.

**B.  EXCESSIVE FORCE**

Plaintiff contends that an October 12, 2006 raid on his cell by jail officials while he was a pretrial detainee violated his constitutional rights. (Doc. # 86 2.) Defendants argue that Plaintiff's constitutional rights were not violated because the dynamic entry shakedown of

4

Plaintiff's housing unit was performed to further the goals of order and security at the facility. (Doc. # 112 8, 10.)

Prisoners "do not forfeit all constitutional protections" by virtue of incarceration, and pretrial detainees "retain at least those constitutional rights that [the Court] ha[s] held are enjoyed by convicted prisoners." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)(citation omitted). However, the constitutional rights retained by convicted prisoners and detainees are subject to the restrictions and limitations based on institutional needs and objectives. *Id.* at 546. "Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel" and even those restrictions that infringe upon a specific constitutional guarantee must be "evaluated in the light of the central objective of prison administration, safeguarding institutional security." *Id.* at 547 (citation omitted). Therefore, jail administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline to maintain institutional security." *Id.* at 547. "'Such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.'" *Id.* at 547-548 (quoting *Pell v. Procunier*, 417 U.S. 817, 827 (1974)).

Because Plaintiff was not a convicted prisoner at the time of the incident giving rise to his complaint, his claims do not arise under the Eighth Amendment. *See Bell*, 441 U.S. at 535 n. 16 (the Eighth Amendment prevents the imposition of cruel and unusual punishment on *convicted* prisoners). "[T]he more protective fourteenth amendment standard applies to conditions of confinement where detainees…have not been convicted of a crime." *Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004) (internal citations and quotations omitted); *see also Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1187 (9th Cir. 2002).

A pretrial detainee cannot be subjected to conditions which amount to punishment. *Bell*, 441 U.S. at 535-36. A particular action will not amount to prohibited punishment unless it

1  causes the detainee to suffer some harm or disability. *Id.* at 538. Punitive conditions may be
2  shown where the challenged restrictions: (1) are expressly intended to punish, or (2) may serve
3  an alternative, non-punitive purpose but are nonetheless excessive in relation to the alternative
4  purpose, or are employed to achieve objectives that could be accomplished through less harsh
5  methods. *Id.*; *see also Jones*, 393 F.3d at 932 (internal citations and quotations omitted).
6  Government interests generally considered non-punitive include: ensuring a detainee's presence
7  at trial, maintaining jail security, and effective management of a detention facility. *See Bell*,
8  441 U.S. at 540. Thus, a challenged action that is reasonably related to a legitimate government
9  goal, will not, without more, constitute punishment. *Bell*, 441 U.S. at 539-40, 546-47.

10  "Not every disability imposed during pretrial detention amounts to 'punishment' in the
11  constitutional sense." *Bell*, 441 U.S. at 537. "Loss of freedom of choice and privacy are inherent
12  incidents of [detention facilities]." *Id.* "[T]he harm or disability caused by the government's
13  action must either significantly exceed, or be independent of, the inherent discomforts of
14  confinement." *Demery v. Arpaio*, 378 F.3d 1020, 1030 (9th Cir. 2004). The mere fact that
15  detention interferes with a detainee's "desire to live as comfortably as possible during
16  confinement does not convert the conditions or restrictions of detention into 'punishment.'"
17  *Bell*, 441 U.S. at 537.

18  Although the Fourteenth Amendment protects pretrial detainees from the use of force
19  that amounts to punishment, it is the Fourth Amendment that "sets the 'applicable
20  constitutional limitations' for considering claims of excessive force during pretrial detention."
21  *Gibson,* 290 F.3d at 1197 (citation omitted). The Fourth Amendment standard is one of
22  "objective reasonableness." *Lolli v. County of Orange*, 351 F.3d 410, 415 (9th Cir.
23  2003)(internal citation omitted). "The question is whether the officers' actions are 'objectively
24  reasonable' in light of the facts and circumstances confronting them, without regard to their
25  underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).

26  In applying the Fourth Amendment reasonableness standard, the court must balance
27  "the nature and quality of the intrusion on the individual's Fourth Amendment interests against

28

6

1  the countervailing government interests at stake." *Graham*, 490 U.S. at 396 (internal
2  quotations and citations omitted). The question of whether force is reasonable under the Fourth
3  Amendment is judged by the totality of the circumstances. *Gibson*, 290 F.3d at 1197 (citation
4  omitted). The Ninth Circuit has cautioned that "this balancing 'nearly always requires a jury
5  to sift through disputed factual contentions, and to draw inferences therefrom'" and that
6  "'summary judgment or judgment as a matter of law in excessive force cases should be granted
7  sparingly.'" *Lolli*, 351 F.3d at 415-16 (citation omitted). To defeat summary judgment, a pretrial
8  detainee need only show that a reasonable jury could find that the officers' use of force was
9  excessive. *Id.* at 416 (citation omitted).

10  Here, construing the evidence in the light most favorable to Plaintiff, the court finds that
11  Defendants have not met their burden of demonstrating there are no genuine issues of material
12  fact.

13  Preliminarily, the court points out that while Defendants submit the affidavits of Dennis
14  Hippert, Landon Porter, and Martin Obos in support of their motion, Mr. Obos is the only
15  affiant who is a defendant in this action. Moreover, none of the affiants have any independent
16  recollection of dealings with Plaintiff. (Affidavit of Dennis Hippert (Doc. # 112) ¶ 2, Affidavit
17  of Landon Porter (Doc. # 112) ¶ 4, Affidavit of Martin Obos (Doc. # 112) ¶ 2.) However, Plaintiff
18  alleges that Defendants Balaam, Sheldon, and Obos took part in the shakedown (Doc. # 86 2),
19  and a factual issue exists as to their conduct.

20  Plaintiff alleges that a twelve-man team took the prisoners in his unit hostage for a three-
21  hour period during which the prisoners were handcuffed behind their backs. (Doc. # 86 2.)
22  Plaintiff further alleges that with a stun gun directed at his body and prison officials yelling at
23  him for compliance, he was forced to march backwards into the solitary confinement section
24  of the jailhouse without case. (*Id.*) Once there, Plaintiff alleges that he was strip searched,
25  forced to show his genitalia, and left naked in his cell for a day. (*Id.*)

26  Defendants present evidence that a dynamic entry shakedown of Plaintiff's housing unit
27  occurred on October 11, 2006. (Affidavit of Dennis Hippert ¶ 2, Doc # 112 Ex. A.) The purpose
28

7

1 of the shakedown is to gain control of a housing unit which has disciplinary issues, evidenced
2 by inmate attitude, items of contraband, and damage to jail property.  (Affidavit of Dennis
3 Hippert ¶ 4.) Members of the Detention Response Team (DRT) performing the shakedown were
4 instructed to memorialize any contact with inmates that was unusual and the only reference
5 to Plaintiff in the incident report is that he was moved to a segregated housing unit as a result
6 of either rule violations or  inability to follow instructions.  (Affidavit of Dennis Hippert ¶ 3,
7 Affidavit of Martin Obos ¶ 3, and Doc. # 112 Ex. A at 5.)  When an inmate is moved to segregated
8 housing during a shakedown, the inmate is restrained by handcuffs and leg restraints, and is
9 required to walk backwards if he or she is considered a disciplinary problem or security threat.
10 (Affidavit of Dennis Hippert ¶ 6, Affidavit of Martin Obos ¶ 3.)  According to Defendants, once
11 in a segregated unit, an inmate is generally strip searched and his uniform changed out.
12 (Affidavit of Dennis Hippert ¶ 7, Affidavit of Martin Obos ¶ 3.)  Defendants maintain that
13 inmates are generally not left in their segregated cell without a uniform for a significant amount
14 of time.  (Affidavit of Dennis Hippert ¶ 7, Affidavit of Martin Obos ¶ 4.)  Defendants contend
15 that the use of a taser does not occur while an inmate is in restraints.  (Affidavit of Dennis
16 Hippert ¶ 6, Affidavit of Martin Obos ¶ 3.)  Nor is it protocol to hold a taser to an inmate's heart
17 to gain compliance.  (Affidavit of Dennis Hippert ¶ 8, Affidavit of Martin Obos ¶ 5.)

18 While Dennis Hippert and Martin Obos maintain that inmates are not left naked in
19 segregated cells for any significant period of time, a trier of fact may believe Plaintiff's version
20 of events that he was left naked in his cell for a full day.  A reasonable fact finder could
21 determine that isolation of a prisoner without clothing for a full day without cause constitutes
22 an unnecessary and wanton infliction of pain without penological justification. Likewise, a
23 reasonable trier of fact may believe Plaintiff's claim that the DRT officers pointed a taser or stun
24 gun at his heart to gain compliance, and determine that this constitutes excessive force under
25 the circumstances.

8

In sum, the court finds that Defendants did not meet their burden in producing evidence to establish the absence of a genuine dispute as to any material fact with respect to Plaintiff's excessive force claim. Therefore, summary judgment should be denied.

**C.    STRIP SEARCH**

To the extent Plaintiff's complaint can be construed as asserting a violation of the Fourth Amendment because he was forced to undergo a strip search, the court will look to established case law as it pertains to pretrial detainees. Detainees "retain some Fourth Amendment rights upon commitment to a corrections facility" and "[t]he Fourth Amendment prohibits only unreasonable searches." *Bell*, 441 U.S. at 558. Moreover, the Ninth Circuit has held that the Fourth Amendment right of people to be secure against unreasonable searches and seizures "extends to incarcerated persons; however, the reasonableness of a particular search is determined by reference to the prison context." *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988). The Ninth Circuit has held that when the purpose of the search at issue was to further institutional security goals within a detention facility, the principles articulated in *Bell* and *Turner v. Safley* govern the court's analysis. *Bull v. City and County of San Francisco*, 595 F.3d 964, 971 (9th Cir. 2010).[2]

In *Bell*, the Supreme Court set forth the following balancing test to evaluate the reasonableness of a strip search:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

---

[2] The court in *Bull* noted, "[c]ases that address searches of arrestees at the place of arrest, searches at the stationhouse prior to booking or placement in a holding cell, or searches pursuant to an evidentiary criminal investigation do not control our review, because housing in the general jail population and the issues attendant to effective detention facility administration are not factors in those cases." *Bull*, 595 F.3d at 971.

9

*Bell*, 441 U.S. at 559. There, acknowledging the strip search was invasive, the Supreme Court upheld the policy of conducting visual body cavity searches of individuals housed at the Metropolitan Correctional Center. *Bell*, 441 U.S. at 558 n. 39, 560.

*Bull* instructs that "[a]lthough *Bell* continues to provide definitive guidance for analyzing detention-facility strip searches under the Fourth Amendment, *Turner v. Safley* is also relevant to [the] analysis." *Bull*, 595 F.3d at 973. "*Turner* directs courts to consider whether the challenged restriction was 'reasonably related to legitimate penological interests.'" *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). In *Turner*, the Supreme Court provided four factors to guide reviewing courts in applying the rational relationship test: (1) the existence of a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) the existence of alternative means of exercising the right that remain open to prison inmates; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and 4) the absence of ready alternatives as evidence of the reasonableness of the regulation. *Turner*, 482 U.S. at 89-91.

Not all four factors are applicable to every case. *Michenfelder*, 860 F.2d at 331 n. 1. As noted in *Bull*, the second *Turner* factor, whether there are alternative means of exercising the right that remain open to prison inmates, *Turner*, 482 U.S. at 90, is not applicable to a search policy because "the right to be free from unreasonable searches is not a right susceptible to exercise by alternative means." *Bull*, 595 F.3d at 973 n. 9 (citing *Michenfelder*, 860 F.2d at 331 n. 1). In applying the *Turner* factors, great deference must be given to prison officials' assessments of their interests because "[p]rison administration is…a task that has been committed to the responsibility of [the legislative and executive branches], and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have…additional reason to accord deference to the appropriate prison authorities." *Michenfelder*, 860 F.2d at 331 (internal citations omitted).

### 1. The *Bell* Balancing Test

#### a. Scope, Manner, and Place

Defendants fail to present any evidence regarding the scope, manner, and place of the strip search other than stating that strip searches are generally performed when an inmate is moved to segregated housing in connection with a dynamic entry shakedown, and inmates are generally not left naked in segregated cells for any significant period of time. (Affidavit of Dennis Hippert ¶ 7, Affidavit of Martin Obos ¶ 4.) The court has not been provided with any detail regarding the scope and manner in which the strip search of Plaintiff was performed, such as whether the strip search was visual or involved physical contact. Nor is the court provided with any evidence regarding where the strip search took place. Dennis Hippert, Landon Porter, and Martin Obos admit that they have no independent recollection of any interaction with Plaintiff. (Affidavit of Dennis Hippert ¶ 2, Affidavit of Landon Porter ¶ 4, and Affidavit of Martin Obos ¶ 2.) Therefore, the court finds that factual issues remain regarding the scope, manner, and place of the strip search in question.

#### b. Justification

It is undisputed that the search was conducted incident to a dynamic entry shakedown performed by DRT officers. According to Defendants, the purpose of a dynamic entry shakedown is to gain control of a housing unit that has disciplinary issues, expressed by inmate attitude, items of contraband, and damage to jail property. (Affidavit of Dennis Hippert ¶ 4.) While Defendants claim this is the general purpose of such a shakedown, they present no specific evidence regarding the circumstances surrounding this particular shakedown. Nor have Defendants presented evidence to establish that this strip search was reasonably related to the proffered penological interest. While gaining control of a housing unit and controlling contraband might very well be legitimate penological interests, Defendants have not presented sufficient evidence to make that determination.

In sum, Defendants fail to meet their burden of establishing the absence of a genuine issue of material fact under the *Bell* balancing test.

### 2. The Turner Factors

The court reaches the same conclusion under the *Turner* factors. There are simply too many factual issues that remain to make a determination under the *Turner* factors. Accordingly, summary judgment should be denied.

## D.  QUALIFIED IMMUNITY

Defendants argue they are entitled to qualified immunity because their actions did not demonstrate any unlawful conduct by Defendants. (Doc. # 112 10-12.)

"[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815 (2009) (citation and internal quotations omitted). Under certain circumstances, state officials are entitled to qualified immunity when sued in their personal capacities. *Carey v. Nev. Gaming Control Bd.*, 279 F.3d 873, 879 (9th Cir. 2002). When a state official reasonably believes his or her acts were lawful in light of clearly established law and the information they possessed, the official may claim qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam); *Orin v. Barclay*, 272 F.3d 1207, 1214 (9th Cir. 2001). Where "the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009) ("while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory").

In analyzing whether a defendant is entitled to qualified immunity, the court must consider two issues. The court must determine whether the plaintiff alleges a deprivation of a constitutional right, assuming the truth of his factual allegations, and whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1241 (2010) (quoting *Pearson*, 555 U.S. 223, 129 S.Ct. at 816 (2009)). "Whether a right is clearly established turns on the 'objective legal

reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Id.* (quoting *Pearson*, 555 U.S. 223, 129 S.Ct. at 822).

The court finds that Plaintiff has presented a claim under the Fourth Amendment and the Fourteenth Amendment under the facts alleged. The general law regarding these constitutional violates was clearly established at the time period in question in this case. *See Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004); *Michenfelder v. Sumner*, 860 F.2d 328 (9th Cir. 1988). Upon resolution of factual issues, the defendants may well be relieved of any liability in this case. However, if Plaintiff's version of events were to prevail at trial, a jury might determine that their conduct amounted to a constitutional violation. Under such circumstances, the actions are not protected by qualified immunity. Thus, summary judgment is not appropriate on this ground.

## E.  EXHAUSTION

Defendants also contend that summary judgment is appropriate because Plaintiff failed to exhaust his state administrative remedies before filing his complaint under 42 U.S.C. § 1983. (Doc. # 112 12.) The burden to raise and prove the exhaustion defense lies with the defendant. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). Defendants have failed to offer any evidence that an administrative grievance procedure exists within the Washoe County Jail that Plaintiff failed to utilize. The court finds that Defendants have failed to satisfy their burden, and therefore summary judgment is not appropriate on this ground.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the District Judge enter an Order **DENYING** Defendants' motion (Doc. #112).

The parties should be aware of the following:

1.  That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate

Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

    2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED: January 19, 2011.

_____
UNITED STATES MAGISTRATE JUDGE